# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SCHLIDA R. YOUNG, ) | |
| ) | |
| Plaintiff, ) | Case No. 15-cv-3162 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| CONTROL SOLUTIONS, LLC, a Delaware ) | |
| Corporation and RUTH MASLEY, in her ) | |
| Individual and Official Capacities, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Schlida R. Young, brings this action against her former supervisor, Ruth Masley, and her former employer, Control Solutions, LLC, alleging that the defendants discriminated against her based on her race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. After a contentious discovery process, the defendants now move for summary judgment on all counts [72]. For the reasons set forth herein, that motion is granted.

**Preliminary Matters**

As an initial matter, this Court notes that Young's memorandum of law in opposition to summary judgment violates Local Rules 7.1 and 5.2. Local Rule 7.1 provides, in pertinent part, that briefs submitted to the court may not exceed 15 pages in length without prior approval of the court, and that any brief in excess of 15 pages must contain a table of contents and a table of cases. Local Rule 5.2(c) requires, in pertinent part, that typed documents submitted to the court must have a line spacing of at least 2.0 lines. Violation of either Local Rule 5.2 or Local Rule 7.1 is a sufficient basis for striking a brief in its entirety.

Here, without prior leave of court, Young filed a 17 page long memorandum of law in opposition to summary judgment. Young's memorandum of law, moreover, had a line spacing of

1

1.49 lines, hiding the fact that her memorandum, when properly formatted, would have been at least 33% longer than the rules allow.  Although this Court declines to strike Young's filing at this juncture in the proceedings, this Court cautions that any future filings that violate Local Rules 5.2 or 7.1 will be summarily stricken.

This Court next turns its attention to Young's alleged violations of Local Rule 56.1.  The defendants ask this Court to strike Young's additional statement of material facts based on a number of procedural violations.  Although the defendants are well within their rights to make this request, this Court believes that striking the statement would be a disproportionate response to the nature of the violations at issue, which include filing the statement twenty-two minutes after the deadline for doing so and filing forty-one statements of fact rather than the forty permitted by the local rules.

Although the plaintiff's filing was untimely, the brief delay caused no prejudice to the defendants and no delay to this case.  In the interest of justice, this Court will overlook the untimely filing and consider the statement of additional material facts, but notes that the seemingly standard practice of waiting until the last hour before midnight to file documents with the Court is an irresponsible practice that leaves little room for error in the event of filing-related problems.  Similarly, to the extent that Young has violated the local rules by filing forty-one statements of additional fact rather than the forty permitted by the local rules, the proper response is to strike the excess statements of fact.   Accordingly, additional statement of material fact forty-one is stricken.

The defendants also note that Young failed to include pinpoint citations in her statement of additional facts.  It is not clear, however, that the Local Rules expressly require such citations and, in any event, the evidence that the plaintiff relies on is not so voluminous as to necessitate pinpoint citations.  This Court accordingly declines to strike Young's additional statement of material facts on this basis.

The defendants also ask this Court to strike those responses to their statement of facts or statements of additional fact which are based on Young and Edward Owens' unsworn declarations. Both declarations in question state that they are given pursuant to a nonexistent statute, 28 U.S.C. § 1776, which this Court assumes is an attempt to reference the provisions concerning unsworn declarations provided in 28 U.S.C. § 1746. Section 1746, however, does not apply to the declarations in question because neither declaration contains the language that section 1746 expressly requires. Because these declarations were not sworn or signed under penalty of perjury, they are outside the range of evidence that can be considered on summary judgment. *DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d 457, 471 (7th Cir. 1990). This Court therefore strikes plaintiff's statements of additional facts ¶¶ 2, 4, 5, 6, 7, 8, 10, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, and 40 and deems admitted defendant's statements of undisputed material fact ¶¶ 3, 8, 14, 16, 20, 21, 31, 49, 53, 59, 60, and 63. To the extent the plaintiff's statements of additional facts or responses to the defendants' statements of fact rely on the declarations and additional evidence, this Court will disregard the factual assertions supported only by the declarations. The Court additionally notes that Young's responses to statements of facts number ¶¶ 33, 44, 45, 48, 50, and 58 are unsupported by any citations to the record as is required by Local Rule 56.1(b)(3)(B). Accordingly, those statements of fact are deemed to be admitted. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

**Background**

The following facts are undisputed unless otherwise noted. Control Solutions is a manufacturer of technology systems and components, including battery chargers, cables, user interface systems, and motion control products. In addition to supplying products to the military, Control Solutions is also an original equipment manufacturer for many customers in the industrial and commercial markets. In 2009, Control Solutions hired David McDermott as a project lead.

3

McDermott was subsequently promoted to be a program manager, and Ruth Masley became his direct supervisor. At the time McDermott was the only employee that Masley supervised. Masley subsequently placed McDermott on a performance improvement plan. McDermott ultimately resigned in August 2011 after being informed that he would be terminated if his performance did not improve. McDermott is black.

Young was hired as a program manager by Control Solutions in December 2011. Masley and other Control Solutions' managers interviewed Young prior to her hiring, and Masley made the decision to offer the position to Young based on her determination that Young was well-qualified for the position. Masley, having interviewed Young, was aware that Young was black at the time that she was hired. Young was Control Solutions' only Program Manager during her employment, and reported directly to Masley. As a Program Manager, Young was responsible for leading product development teams, developing and updating schedules, estimating and tracking product budgets, interfacing with customers, and providing up-to-date schedule and cost estimates to Control Solutions' management.

In December 2012, Young was placed on a 90 day performance improvement plan (PIP). Young was placed on the PIP after Masley concluded that Young was not adequately performing her duties, was disobeying directions, and was engaging in confrontational interactions with coworkers and clients. Of particular concern to Masley was Young's failure to promptly update schedules and budgets for projects that she was assigned to manage.

The PIP additionally described a number of complaints about Young that Masley had received from client contacts and Young's coworkers, including that:

> Schlida has become angry with [client] employees and will complain
> to them when she believes she has not been copied on a
> communication or has been kept out of the loop on an action.
> [Client] would prefer Schlida inquire as to the reason why she was
> not communicated to versus getting angry and accusing [client] of
> leaving her out of updates.

4

(Dkt. 92-14). The PIP further reported that:

> Schlida portrays a negative attitude when communicated to [client] employees. Several [client] employees feel Schlida just does not like them, does not like working with them and does not respect them on a personal or professional level.

(*Id*.). The PIP also stated, in relation to Control Solutions employees, that:

> Schlida has been involved in several discussions with co-workers that have ended in disagreements. Instead of defusing the situation or asking the other employee to resume conversations at a time when both employees can talk in a professional manner, Schlida will respond with outbursts and negative comments. I have counseled Schlida on several occasions to be respectful to fellow employees and be professional. It was my expectation of her to defuse the situation and/or come to me or HR with issues she cannot resolve.
>
> Schlida gets offended and accuses co-workers if she is not copied on correspondence or if she feels she has been left out of a meeting or update. In one instance it was discovered that Schlida was wrong but did not apologize to the employee she had the outburst with. It is my expectation that Schlida would go to the employee and ask what transpired that she was not copied, etc. before she accuses someone of intentionally leaving her off a list.

(*Id*.). Masley also personally recounted an incident in which Schlida "got visibility (sic) upset and angry with me" after Masley informed her that they would not be attending a meet and greet with a client. (*Id.*).

Despite Young's placement on the PIP, Masley noted that Young continued to take too long to complete assignments and failed to complete assignments. Masley further testified that by the close of the PIP multiple members of Control Solutions' management had lost faith in Young's ability to perform her job. Although Young met some of the objectives of the PIP, she was unable to meet all of the objectives, especially those concerning the substance of her work. Young accordingly was fired on March 21, 2013.

Following Young's termination, Masley asked a former colleague, Tanya O'Connor, to apply for the vacant Program Manager position. That colleague, who was white, was subsequently hired

following an interview with a team of Control Solutions managers. No African-American applicants applied for the vacant program manager position.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[m]erely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**Discussion**

Young alleges that Control Solutions discriminated against her based on her race in violation of Title VII and that Control Solutions and Masley discriminated against her based on her race in violation of 42 U.S.C. § 1981. Title VII provides, in pertinent part, that it is illegal for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ." 42 U.S.C. § 2000e-2(a). Section 1981 provides that the right "to make and enforce contracts" may not be impaired by nongovernmental discrimination. 42 U.S.C. § 1981. Accordingly, in order to survive summary judgment a plaintiff alleging racial discrimination under Title VII or 42 U.S.C. § 1981 must provide evidence that would permit a reasonable factfinder to conclude (1) that they are a member of a protected group; (2) that they

6

suffered an adverse employment action; and (3) that the adverse employment action was a result of their membership in that protected group. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403–04 (7th Cir. 2007), *aff'd* 553 U.S. 442, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008) (recognizing that claims of discrimination under Title VII and section 1981 have the same prima facie requirements).

Here, it is undisputed that Young is a member of a protected group and that her termination constituted an adverse employment action. Thus, the only question before this Court is whether there is evidence that would permit a reasonable factfinder to conclude that Young's race caused her discharge. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). In conducting this analysis, this Court considers all of the relevant and admissible evidence that is before it. *Id.*

As an initial matter, this Court recognizes that an inference of nondiscrimination is created when an employer fires an employee who it previously hired with full knowledge of the employee's race. *E.E.O.C. v. Our Lady of Resurrection Med. Ctr.*, 77 F.3d 145, 152 (7th Cir. 1996). It is undisputed that Masley and Control Solutions were aware of Young's race when she was hired, and that Masley was the individual primarily responsible for Young's subsequent termination. These facts create an inference of nondiscrimination that Young must overcome by presenting admissible evidence establishing that she was discriminated against.

Young contends that she has provided evidence of the defendants' discriminatory intent through the PIP's repeated descriptions of Young as angry, which Young asserts are an attempt to invoke the stereotype of the "angry black woman." The PIP set forth that a client had reported that Young had "became angry" with its employees when she felt like she was being left out of the loop and that the client would prefer that she inquire why she was not included in communications rather than "getting angry" and accusing the client of excluding her. It also sets forth an incident in which Masley felt Young had "got visibly upset and angry" with Masley after Masley told her not to attend a certain meeting. And, finally, in the "expectations" section the PIP noted that "[g]etting angry and

being offended is counterproductive." There is no evidence, however, that anyone at Control Solutions ever referred to Young as an "angry black woman" or explicitly attributed Young's perceived anger to her race.

Angry and its synonyms are, standing alone, innocent words with no racial connotation. They are words, however, with a long history as part of a stereotypical depiction of black women that can trace its roots to the institution of slavery. Although the parties offer limited evidence on this point, there appears to be an academic consensus regarding both the resilience of this stereotype within American society and its continued detrimental impact upon black women. When a word or concept is so pervasively and enduringly linked to a derogatory stereotype, its use to reference individuals traditionally subject to the stereotype inherently raises the specter of motivation or bias.

Here, the defendants have offered limited evidence, in the form of Masley's testimony and her notes from her conversations with the client's employees about Young, to support the PIP's characterization of Young's conduct. That evidence, however, is subject to multiple interpretations, and a jury could reasonably find that Young's race contributed to or was a factor behind the characterizations at issue. A dispute of material fact therefore exists as to whether the comments contained in the PIP were racially motivated.

Young also contends that she has set forth sufficient evidence of the defendants' discriminatory intent through the *McDonnell Douglas* burden-shifting framework. Under the *McDonnell Douglas* framework, a plaintiff can establish a prima facie case of discriminatory termination by showing that she is a member of a protected class, she was performing well enough to meet her employer's legitimate expectations, she suffered an adverse employment action, and that similarly situated employees outside her protected class were treated more favorably. *McGowan v. Deere & Co.,* 581 F.3d 575, 579 (7th Cir. 2009). If the plaintiff makes out a prima facie case on these factors, the burden shifts to the defendant to offer a permissible, nondiscriminatory reason for the

8

adverse employment action. *Id.* If it does so, the burden shifts back to the plaintiff to establish that the stated reason is merely a pretext for discrimination. *Id.*

It is undisputed that Young is a member of a protected class and that her termination constituted an adverse employment action. Young, however, has not introduced evidence sufficient to establish that she met her employer's legitimate expectations. In assessing whether a plaintiff met an employer's legitimate expectations, this Court does not consider whether those expectations are realistic, but only whether they are made in good faith, without fraud or deceit. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000), *overruled on other grounds by Ortiz*, 834 F.3d 760. The evidence here reflects that the defendants felt that Young was not meeting their expectations because she was not consistently updated project schedules and cost estimates and because there had been complaints, both from clients and from other Control Solutions employees, that Young was difficult to work with. Young identifies no evidence refuting Control Solutions' criticisms, but instead points to additional evidence showing her value to Control Solutions, such as having assisted in securing an $18 million dollar federal contract. Young also asserts that a project she was assigned to was unsuccessful despite the fact that Massey and others had worked on it. That argument, however, is irrelevant, because Control Solutions did not base its decision to place Young on a PIP or to terminate her on Young's failure to complete certain projects but instead on Young's failure to properly update project budgets and timelines while managing projects. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 980 (7th Cir 2004) (recognizing that an employee's acceptable performance for most of a period of employment "does nothing to rebut" an employer's contention that a specific aspect of her performance warranted termination).

Young also challenges whether Control Solutions' expectations of her were reasonable or were normal practice within her area of specialty. These arguments, however, are incapable of calling the bona fide nature of Control Solutions' expectations into question. *See Id.* at 979 (quoting

9

*Hartley v. Wis. Bell, Inc.*, 124 F.3d 887, 890 (7th Cir. 1997)) ("The employer's explanation can be 'foolish or trivial or even baseless' so long as the company 'honestly believed' in the reasons it offered for the adverse employment action."). To be sure, Young has introduced evidence that tends to suggest that she was a valuable employee and that certain project's failures were not attributable to her. But Young has failed to identify any evidence capable of rebutting Control Solution's evidence establishing that she was not meeting their legitimate expectations.

Young has also failed to introduce evidence suggesting that similarly situated employees outside her protected class were treated more favorably. In assessing whether someone is "similarly situated," courts conduct a flexible, commonsense examination of all relevant factors. *Anderson v. Office of Chief Judge of Circuit Court of Cook Cnty.*, 66 F. Supp. 3d 1054, 1064 (N.D. Ill. 2014) (Tharp, J.) (citing *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012)). Nevertheless, the purportedly similarly situated employee must be "directly comparable to the plaintiff in all material respects." *Coleman*, 667 F.3d at 846 (citation and internal quotation marks omitted). Thus, in a typical case, a plaintiff must be able to establish that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct "without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (citation and internal quotation marks omitted). Although whether a comparator is similarly situated is usually a question for the fact-finder, summary judgment is appropriate when no reasonable fact-finder could find that the plaintiffs have met their burden on the issue. *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 945 (7th Cir. 2009).

Here, Young contends that she is similarly situated to Masley, McDermott, and O'Conner. Masley, however, cannot be used as a comparator for the purpose of this analysis because it is Masley's decision-making that Young seeks to call into question. It is undisputed, moreover, that

Masley held a different position than Young, had a different supervisor than Young, and had not been placed on a PIP.

McDermott, similarly, cannot be used as a comparator because he, like Young, is black. Thus, although his experience with Control Solutions might be capable of bolstering Young's claims, it cannot be used to establish that similarly situated white employees were treated differently than Young. McDermott also is not similarly situated to Young. Although McDermott did work under Masley's supervision as a project manager prior to his termination, McDermott was originally hired as a project lead and was less qualified for the Project Manager position than Young was. McDermott, moreover, was placed on a PIP for substantially different reasons than Young, and ultimately resigned his position rather than waiting until he was terminated.

The sole individual who Young points to who could constitute a valid comparator is O'Conner. O'Conner, who is white, was hired to replace Young and therefore worked for the same supervisor as Young and had similar duties to Young. There is no evidence, however, to suggest that O'Conner's performance was unsatisfactory or that she was not meeting Control Solutions' legitimate expectations in a manner comparable to Young. O'Conner therefore cannot function as a comparator to Young. *Coleman*, 667 F.3d at 846.

Given the lack of similarly situated comparators and the uncontroverted evidence that Young was not meeting her employer's legitimate expectations, this Court holds that Young has not introduced evidence capable of establishing discriminatory intent through the *McDonnell-Douglas* burden-shifting framework. Accordingly, the only evidence that Young has introduced to establish causation is the PIP's characterization of her as "angry." As the Court previously discussed, however, the uncontroverted evidence establishes that Young was terminated due to her failure to satisfactorily update project budgets and timelines in her capacity as a project manager. Young, moreover, has offered no evidence establishing that her characterization as "angry" contributed in a

meaningful manner to her discharge. Although the evidence that Young has provided might suffice to establish general racial animas, it is incapable of establishing that her discharge was caused by her race. *See Ortiz*, 834 F.3d at 765. This is especially so given the previously noted inference of nondiscrimination that this Court must consider. *See Our Lady of Resurrection Med. Ctr.*, 77 F.3d at 152.

As a final matter, this Court turns to Young's hostile work environment claim. In order for a hostile work environment claim to survive summary judgment, the plaintiff must identify sufficient evidence demonstrating that (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016). "Deciding whether a work environment is hostile requires consideration of factors like the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Id.*

Here, Young argues that her hostile work environment claim is supported by evidence showing that coworkers schemed to embarrass her in front of the CEO in order to diminish her credibility and to cause management to lose faith in her and that coworkers falsely portrayed her as angry and difficult. The evidence, however, does not support Young's allegations that coworkers "schemed" against her or reflect a work environment that was objectively and subjectively offensive. Nor is there any evidence linking the purported harassment to Young's race. Accordingly, Young has not introduced evidence sufficient to support her hostile work environment claim.

**Conclusion**

Young's allegations offer many plausible explanations for her firing, some of which are benign and some of which are less benign. Certainly, after reviewing the evidence there is a dispute

in this Court's mind as to whether Young was the victim of unfair treatment. That question, however, is not before this Court. The only question that this Court can decide today is whether Young has introduced evidence capable of supporting her claims of racial discrimination. As set forth above, she has not. This Court therefore has no choice but to leave it to parties' consciences to resolve what questions remain. The defendants' motion for summary judgment [72] is granted.

IT IS SO ORDERED.

Date:  June 19, 2017

Entered: /s/ Sharon Johnson Coleman
SHARON JOHNSON COLEMAN
United States District Court Judge